**SINCLAIR PRAIRIE OIL CO. v. PERRY.**

**No. 6193.**

Court of Civil Appeals of Texas. Texarkana.

Nov. 22, 1945.

Ramey, Calhoun, Marsh, Brelsford & Sheehy and Fred Hull, all of Tyler, and Paul A. McDermott, of Fort Worth, for appellant.

Robert M. Allen, of Henderson, for appellee.

HARVEY, Justice.

T. N. Perry filed suit in the County Court of Rusk County, Texas, against Sinclair Prairie Oil Company for the value of two mares which were alleged to have died as a result of drinking a poisonous chemical or substance from pits of the defendant located on its lease in Rusk County. From a judgment in Perry's favor for the sum of Four Hundred Dollars, based upon a jury verdict, Sinclair Prairie Oil Company perfected an appeal to this Court. By points properly presented, appellant attacks the sufficiency of the evidence to show that it permitted a poisonous chemical to accumulate in its slush pits on the lease in question. Further, it urges that the judgment against it ought not to stand because it was under no legal duty to appellee to fence its pits to prevent livestock from having access thereto, and that the appellee was guilty of contributory negligence in permitting his mares to graze on its lease near its wells and slush pits.

Appellant, as assignee of an oil and gas lease executed in 1929 by P. S. Tipps and wife, had drilled and was operating a number of oil wells on the land covered by the lease. The lease contained the usual provisions respecting the lessee's right to explore for and produce oil and gas on the premises, with the exclusive and customary rights reserved to build and maintain such pits, reservoirs, and plants as were necessary for the conserving of oil produced on the premises. Subsequent to the time the oil and gas lease was executed by P. S.

Tipps and wife, the date not appearing in the record, one W. E. Gibbs secured a lease on the Tipps' land covered by the oil and gas lease for the purpose of pasturing his livestock. In turn, Gibbs gave a permissive right to T. N. Perry to pasture his mares on the same land. Perry, with knowledge of the use to which the land was being put, as well as of the fact that livestock were likely to drink from the pits where oil and salt water had accumulated, pastured his mares on the land under lease to appellant for about two years, at the end of which time one of them was found in his corral suffering from some complaint from which it died a few hours later. The other mare the same day was found dead near the slush pits of the appellant. T. N. Perry in his suit against the Sinclair Prairie Oil Company predicated his cause of action on the allegations that the defendant was guilty of negligence in permitting a sweet tasting poison chemical or chemicals to be used on its lease without covering or removing them, and in failing to erect a fence around where such poisonous chemicals had accumulated. In answer to issues submitted to them, the jury found that the mares died from drinking a poisonous chemical that had accumulated in the defendant's slush pits, and that the defendant was guilty of negligence in permitting such chemicals to accumulate on its lease and in not building a fence around its pits which was the proximate cause of the death of the mares. Also, that Perry knew that the pits were being used to dispose of refuse and waste oil on the lease where the defendant was operating its oil wells, but that Perry was not guilty of negligence in permitting his mares to graze near the open slush pits of the defendant.

Only two witnesses for the plaintiff testified with reference to what caused the death of the two mares. T. N. Perry, over objection, was permitted to testify that in his opinion the mares died as a result of drinking poison used by the defendant in treating oil on their lease. On cross-examination he admitted that he did not know if the oily substance he had seen running from the noses of the mares was poison. Further, he stated that his testimony to the effect that poison was used by the defendant in treating its oil was based on what the "fellows told him." The other witness, W. E. Gibbs, testified to seeing the same oily substance re-

sembling salt water coming from the nose of one of the dead animals, but that he did not know if they had been poisoned. The other evidence, circumstantial in nature, indicated that the mares might have drunk from the slush pits.

We are of the opinion that the evidence fails to establish the use of poison chemicals by the defendant company in the treatment of its oil on the lease in question. Perry related that his knowledge of the nature of the substance used was based on what someone had told him. Evidence incompetent to establish an essential fact or that is based on surmise, conjecture or hearsay, although not objected to on the trial, will not be considered on appeal as possessing sufficient probative force to prove the thing sought to be shown. Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Cosden Oil Co. v. Sides, Tex.Civ.App., 35 S.W.2d 815. However, viewing the situation in the light most favorable to the appellee, let us assume that the evidence, circumstantial and otherwise, is sufficient to show that the mares died as a result of salt water poisoning. There is nothing in the record to indicate that the appellant was under any legal obligation to fence off or cover the pits where the salt water, oil, and compound used in treating the oil, had accumulated. The holder of the oil and gas lease owned the dominant estate in the land for the purpose of exploring for oil and gas; the subsequent lessee of the surface of the land acquired his right subject to the burdens imposed upon it by the prior oil lease. The mineral lessee possessed the exclusive right to use so much of the leased premises as was reasonably necessary in its operations in drilling for and in producing oil and gas. Summers Oil and Gas, p. 2, Sec. 652. Such lessee owed no legal duty to the lessee of the surface to fence off its pits, tanks, machinery, etc., to prevent livestock from having access thereto. The only duty it owed was not wilfully or intentionally to harm such livestock. So long as the oil and gas lessee used the premises and maintained its operations in the usual and customary way, consistent with the purposes for which the land was leased, it was not liable for damages resulting to livestock merely because it failed to keep such livestock away from the scene of its operations. See the case of Pitzer & West v. Williamson, Tex. Civ.App., 159 S.W.2d 181, quoted with approval in Beneficl v. Pure Oil Co., 322 Ill.App. 5, 53 N.E.2d 726; also, Pure Oil Co. v. Gear, et al., 183 Okl. 489, 83 P.2d 389, 393. In the last case cited, the appellant owned the mineral lease and the appellee the agricultural lease on the same premises. Appellee's cattle were poisoned by drinking salt water from the uninclosed ditch of appellant on the leased tract. We quote from the opinion in that case:

"We must first determine the duty that the defendant owed with respect to plaintiffs' cattle. Inasmuch as we have held that the defendant, as mineral lessee, has the exclusive right to the use of the space required for the construction of the ditch and pond, under the circumstances in this case, it follows that the cattle in drinking from this ditch were trespassers. Such being the case, the duty owed, under the general rule, would be merely not to intentionally, wilfully or wantonly injure the animals, or after the discovery of their peril to use reasonable care."

In the case of Grimes v. Goodman Drilling Co., Tex.Civ.App., 216 S.W. 202, 204, we find this statement by the court:

"As appellant purchased the premises burdened with the terms of the lease, he is in no position to complain of conditions produced by appellees, such as are usual and customary during the drilling of an oil well. If he is presumed to have known, as we think he is, that the lessees had the right to sink a well on lot 6 of the block, he is further presumed to have known that conditions would naturally arise during the drilling of said well which would make the use of the premises as a home disagreeable, inconvenient, and perhaps dangerous. Appellant must have known that in the drilling of a well a derrick was essential, and that it would be necessary to have an engine and boiler placed on the lot and a slush pit."

Under the facts of the instant case and the authorities cited, we think that the motion of appellant for an instructed verdict in its favor at the conclusion of the evidence in the trial court was well taken and should have been granted.

The judgment is reversed and here rendered for the appellant.