**TRINITY PRODUCTION CO. v. BENNETT.**
No. 6309.

Court of Civil Appeals of Texas. Amarillo.
May 11, 1953.

Turpin, Kerr & Smith, Midland (Emil C. Rassman, Midland, of counsel), for appellant.

Paul New, Denver City, for appellee.

PITTS, Chief Justice.

This is an appeal from a judgment based upon a jury verdict awarding property damages in the sum of $350 by reason of the accidental death of a cow on the range when she got her head caught in a moving oil well pump. On May 22, 1934, L. P. Bennett and wife Ruth Bennett, then owners of the section of land in question situated in Yoakum County, Texas, executed an ordinary oil and gas lease in the usual form on the said land to Ralph W. Leftwich. The said lease has since been continuously operative but the son of the lessor, Gene Bennett, appellee herein, succeeded his parents in fee simple title to the said land and the Trinity Production Company, appellant herein, succeeded Ralph W. Leftwich as

owner of the oil and gas lease thereon. There has been oil and gas production on the said land since the early forties. The oil well over which the pump in question was in operation had been commercially producing since its completion in 1943 and on April 14, 1952, the date appellee's cow got caught in the said pump and was killed as a result thereof, the said well belonged to appellant, Trinity Production Company, and for a period of two years prior to the accidental death of the cow the production had necessarily been drawn from the said well by the use of the said pump. Since 1945 appellee, Gene Bennett, had been using the surface of the land in question for grazing purposes and was acquainted with the oil operations thereon.

On August 2, 1952, appellee, Gene Bennett, sued appellant, Trinity Production Company, for the sum of $500 as the alleged value of his said cow together with an unborn calf. Appellee further alleged that appellant was under a duty to have the said oil well location and pumping unit fenced and its failure to have such fenced was negligence which directly and proximately caused the death of his cow which resulted in his sustained injury and damages. Appellant excepted to such pleadings on the grounds of its prior and superior rights under the terms of its mineral lease which authorized the installation of the visible pumping unit for the purpose intended, all of which was known to appellee, and that appellant owed no such alleged duty to appellee of keeping the premises fenced. Subject to its exceptions appellant joined issues with appellee and particularly pleaded that it owed no duty to fence the premises and therefore could not have breached any such duty and was not liable for damages.

Appellant's exceptions were overruled by the trial court and the case went to trial before a jury. Upon its verdict judgment was rendered for appellee as previously stated from which an appeal was perfected. Appellant predicates its appeal upon two points of error charging that the trial court erred in holding that appellant owed a duty to appellee to keep the pump premises fenced and was guilty of negligence because of its fail-ure so to do, and further charging that improper evidence was admitted by the trial court and heard by the jury concerning subsequent acts of appellant's agents which occurred after the date of the injury about which appellee complained. Appellant briefed well its points and presented its oral argument on submission day, while appellee failed to present either a brief or an argument in this court in support of his contentions.

In response to special issues submitted the jury found that appellant was negligent in its failure to fence its pumping unit and that such negligence was the proximate cause of the death of appellee's cow, which resulted in his damages in the sum of $350. In response to further issues submitted concerning foreseeableness, by some process of reasoning, the jury also found that appellant, "in the exercise of ordinary care, should have foreseen that plaintiff's cow would be killed by the pumping unit", but it further found that appellee or plaintiff should *not* have, "foreseen, in the exercise of ordinary care, that his cow would be killed by defendant's pumping unit." It seems that the jury used the same "measuring stick" in arriving at its answers to these two similar issues submitted but got opposite results as to the foresight of the parties. We can hardly determine by what process of reasoning a jury could find that appellee under the facts and circumstances was *not* charged with any foresight, "in the exercise of ordinary care", when he, according to the record, was an experienced ranch man who must have known much about the peculiar nature and habits of range cattle, while at the same time it further found that appellant, an oil corporation, by the same rule of prudence, observing the existing situation and circumstances only through the vision of its experienced oil operators, who presumably knew little about the peculiar nature and habits of range cattle, was charged with ample foresight concerning the very same matter and under similar facts and circumstances.

But, be that as it may, for reasons later stated, we do not deem the answers of the jury to any of the issues im-

portant in determining the controlling questions here presented since such are questions of law and not questions of fact for a jury. Appellee pleaded and predicated its claim of right for recovery upon his charge that appellant owed "a duty to have said well location and pumping unit fenced" and that its failure so to do was negligence which proximately caused his property damage. But he wholly failed to establish any such claims. The burden was upon appellee to establish by proper evidence that appellant owed such a duty and until he discharged his burden and established such a claim, he was not entitled to recover.

Appellee testified, in effect, that the mineral lease, which authorized appellant to operate on his land, was a regular ordinary gas and oil lease in the usual form. As a witness he was handed the said lease, which he identified, and he was asked by appellant's counsel to point out any provision therein contained requiring the fencing of the pump premises but, after examining the lease, appellee failed to point out any such provision or to attempt to do so. The lease contract was not introduced by either party and it is not therefore before us. But in the face of this record, we must assume that the lease contract did not in any way obligate appellant to build a fence around the pumping premises where appellee's cow was killed. There is no evidence in the record tending to show that such a duty was required.

In the recent case of Baker v. Davis, Tex.Civ.App., 211 S.W.2d 246, where there existed a very similar factual situation to that here presented, the court held that where an oil and gas lease did not obligate the lessees to place a guard or fence around an underslung pump jack and lessees were in possession and operating under the mineral lease when a cattle owner with knowledge of facts was grazing his cattle on the land in question when a steer was killed by the pump jack, the owner of the steer was not entitled to recover damages from the lessees. The court there further held that in the absence of a duty requirement, no negligence existed on the part of lessee and it had been held, under such circumstances, that the owner of the cow was himself guilty of negligence in the matter and in support of such statement the court there cites many authorities.

In the very similar case of Sinclair Prairie Oil Co. v. Perry, Tex.Civ.App., 191 S.W.2d 484, 486, the court held that the mineral lessee owed no legal duty to the holder of the surface of the land "to fence off its pits, tanks, machinery, etc., to prevent livestock from having access thereto."

Such was likewise held in the similar case of Pitzer & West v. Williamson, Tex.Civ.App. 159 S.W.2d 181, notwithstanding the verdict of a jury to the contrary. The court there further found, under a similar factual situation to that here presented, that plaintiff was guilty of contributory negligence, under the facts and circumstances presented, although the jury had found to the contrary.

In all of the three similar cases cited, jury verdicts were rendered for damages for plaintiffs by reason of a failure of duty to fence the premises of oil operations, but the three separate appellate courts reversed and rendered the judgments there entered and cited numerous authorities in support of their actions. In the case at bar, we have a similar factual situation raising the same law questions and as a result thereof it is our opinion that the same results should prevail. We therefore sustain appellant's first point of error, reverse the judgment of the trial court and render judgment here for appellant, denying appellee any recovery. For this reason the matters raised in appellant's second point become immaterial. Reversed and rendered.