R. P. JOHNSON, Appellant,

v.

J. B. LOGWOOD, Appellee.

No. 7876.

Court of Civil Appeals of Texas.

Texarkana.

July 2, 1968.

Rehearing Denied July 23, 1968.

Sidney J. Diamond, Biesel, Zweig, Diamond & Brady, Dallas, Jack N. Price, Longview, Tom Steele, Linden, for appellant.

Carney & Mays, Atlanta, for appellee.

CHADICK, Chief Justice.

By suit instituted January 11, 1966, J. B. Logwood sued R. P. Johnson in the District Court of Cass County, Texas, to reduce a $19,551.01 promissory note to judgment, and for interest, attorney fees, and costs. Logwood alternatively sought a recovery under the provisions of an alleged agreement be-

tween the parties binding Johnson to pay Logwood 49% of any amount Logwood had theretofore advanced on behalf of the parties to pay obligations of Atlantex Slurry Seal, I.ic. In a sworn answer filed October 25, 1966, Johnson denied the execution or existence of the note and of any agreement, written or oral, obligating him to reimburse Logwood for payment of Atlantex Slurry Seal, Inc.'s indebtedness.

A motion for production of documents filed by Johnson December 9, 1966, moved that Logwood be required to produce the note in suit and permit it to be inspected and copied by Johnson. No order was made on the motion. Thereafter on December 27, 1966, Johnson filed a first supplemental motion for production of documents, and requested that the instrument evidencing the promissory note be delivered to a specified person for handwriting and chemical analysis. The supplemental motion expressed a willingness to pay for the transportation of the document to Houston, and to guarantee its safety while out of the custody and control of Logwood. Hearing on the supplemental motion was set for January 9, 1967. Logwood replied to and resisted the first supplemental motion. No order was entered.

Testimony at the trial on the merits shows that prior to March 17, 1967, by agreement of the parties Mrs. Lucile P. Lacey, a questioned document examiner, was allowed to inspect and examine the note in the office of counsel for Logwood. On March 23, 1967, Johnson filed a second amended motion for production of documents and attached thereto the affidavit of Mrs. Lacey, together with a letter from her addressed to counsel for Johnson. This last motion showed that Mrs. Lacey was permitted to and did bring to the office of counsel for Logwood portable equipment specially designed for examining questioned documents, and testimony at the trial shows that she was permitted to test, inspect, and examine the note without hinderance and without time limitation. Mrs. Lacey's affidavit says:

"However, due to the very nature of the note in controversy and the type of examination that is necessary it is necessary for me to examine the note in question in my laboratory in Houston in order to make an all-inclusive opinion.

"It is necessary for me to make this examination in my laboratory because in order to make a firm opinion, I need to have and use certain specialized measuring instruments, lighting and photographic equipment, which by their very nature are too heavy and cumbersome to be portable enough to transport to Cass County. It is my best judgment that until this document is examined in my laboratory, no all-inclusive opinion can be reached."

In her trial testimony Mrs. Lacey specified several conditions in the type on the note document that aroused her interest and suspicions. Included were indications that portions of the document might have been typed at different times, and that different typewriter ribbons might have been used in the typing process. On May 1, 1967, Logwood's answer to the second supplemental motion objected that the second supplemental motion referred to "certain matters revealed to Mrs. Lacey in her inspection of the note, but does not specify what matters were revealed", and objected to further discovery orders on the ground that Johnson was proposing a "fishing expedition" in the hope of finding a defense to the note. The court overruled the second supplemental motion.

 The burden is on the applicant for a discovery order to show good cause for its issuance. Tex.R.Civ.P. 167. Appellate review of the trial court's disposition of a motion for discovery is limited to determination of whether or not the trial judge abused the legal discretion vested in him. Rush v. Browning, 103 Tex. 649, 132 S.W. 763 (1910); Southern Bag & Burlap Co. v. Boyd, 120 Tex. 418, 38 S.W.2d 565 (Tex. Comm.App.1931); Brown v. Lundell, 334

S.W.2d 616 (Tex.Civ.App.Amarillo, 1960), affirmed 162 Tex. 84, 344 S.W.2d 863 (1961); Gale v. Spriggs, 346 S.W.2d 620 (Tex.Civ.App.Waco, 1961, writ ref'd, n. r. e.). The unsworn second supplemental motion stated that Mrs. Lacey's inspection had found "certain matters" that required laboratory examination, and Mrs. Lacey's affidavit and letter attached to the motion stated the "very nature" of the note made laboratory analysis necessary; however, each was couched in language that gave no hint that a specific defect, infirmity or condition tending to invalidate the note as a legal instrument or cast suspicion upon its execution or genuineness, had been found in the document by the examination Mrs. Lacey had made. As the motion and supporting papers laid a foundation, and as the record in the case now reflects, nothing but these generalities were tendered to the judge as a reason why a laboratory examination was necessary to determine the true character of the note. In truth, the language used concealed any tentative opinion Mrs. Lacey had on the genuineness of the note, or any suspicious circumstance she may have encountered in her examination. The terms "certain matters" and "very nature" are vague, uninformative broadsides, concealing specifics and conveying little meaning useful to a judge in determining whether or not cause for further inspection was shown.

The absence of specific information and tentative conclusions in the affidavit left the trial judge with no basis for concluding that Mrs. Lacey had found anything reasonably calculated to arouse her suspicions, or that might indicate the note had been produced, changed, tampered with or forged, as Johnson alleged in his pleadings. The original note was available for the trial judge's inspection, and the "very nature" of the note may be assumed to have had his consideration. Action in overruling the motion indicates the judge found nothing in the written instrument that called for laboratory examination. From the judge's perspective at the time he ruled, the area of essential matter was limited to the note in question and the affidavit of an expert

questioned document examiner, who, after an examination, was either unable or unwilling to furnish even a tentative opinion respecting the genuineness of the document, or to point to any suspected infirmity in it. Under the circumstances the judge's action was well within the bounds of the discretion allowed him by Tex.R.Civ.P. 167. This record is such that the judge might reasonably have concluded that Johnson failed to show good cause for the issuance of a discovery order of the nature sought.

The second point of error in Johnson's brief is as follows:

"The trial court erred in failing to sustain a motion to suppress and restrict evidence pertaining to the alleged agreement by the Appellant to stand good for the debts of the corporation, such evidence being violative of the statute of frauds, and in failing to sustain objections to the introduction of such evidence during the trial."

Logwood counters, saying that the indebtedness described as that of Atlantex Slurry Seal, Inc., in Johnson's discussion of the point, was in law and in fact independent, original indebtedness of Logwood, Johnson, and a third shareholder in the corporation. It is Logwood's position that the corporation's financial position was weak, and so that it might do business the shareholders agreed to advance the corporation operating funds as the need arose. Logwood contended that by the terms of an agreement reached between the three shareholders, he, Logwood, agreed to and did advance the full amount required, on the understanding with Johnson and the other shareholder that they would repay him the money he advanced in proportion to their interest in the corporation. Logwood plead the agreement as a theory of recovery, and evidence was introduced tending to support it, and the issues made were submitted to the jury for determination. Logwood's pleadings also embraced an alternative action on a promissory note, as heretofore mentioned. Over all, Logwood's contention was that the note represented Johnson's share, under the

agreement, of the funds advanced by Logwood for the corporation's operations. The issues made with respect to the promissory note by the pleading and evidence were also submitted to the jury, and on favorable answers thereto the trial court entered a judgment in accord with the jury's verdict on the promissory note issues.

■■■ The sufficiency of the evidence to support the jury's verdict on the promissory note issues is not questioned in this appeal. It appears that the court properly entered such judgment unless alleged errors briefed under the points are found to show reversible error. The theory of a recovery on the basis of Johnson's liability because of an original independent obligation to Logwood and not on a collateral promise to pay the corporation's indebtedness appears to correspond to the theory of recovery in Walker v. Lorehn, 355 S.W.2d 71 (Tex.Civ. App. Houston, 1962, writ ref'd, n. r. e.). See also Uvalde National Bank v. Brooks, 162 S.W. 957 (Tex.Civ.App. San Antonio, 1914, writ ref'd); Shahan–Taylor Co. v. Foremost Dairies, Inc., 233 S.W.2d 885 (Tex.Civ.App. San Antonio, 1950, no writ); 26 Tex.Jur.2d Statute of Frauds, § 15 (1961). Pleading and evidence in support of the theory was proper and admissible. Though some part of such evidence might not have been relevant to issues made in connection with the alternative action on the note, in the absence of a motion to restrict evidence to the relevant action, harm, if any, is waived. 1 Tex.Law of Evidence (McCormick & Ray) § 21. The point of error is overruled.

Appellant Johnson's point of error No. 10 is as follows:

"The trial court erred in allowing the Plaintiff to make a change in his deposition without complying with the rules of Civil Procedure, and without giving notice thereof to the Defendant, and in allowing the changed deposition to be read into evidence and denying the right of effective cross-examination with the

answer as originally given by the Plaintiff."

An issue, crucial in importance, developed in the trial over whether the note in suit was executed in Logwood's office or in the office of a banker. The banker, a principal witness for Logwood and the third of the three shareholders owning Atlantex Slurry Seal, Inc., testified that he filled in the note form and that Johnson signed it in his, the banker's, office. Logwood, testifying as a witness, was undergoing cross-examination when his attention was directed to a question and his answer to it appearing in a pretrial deposition on file in the case. The record indicates that in the original deposition testimony Logwood stated the promissory note was executed in his, Logwood's, office. (The deposition containing Logwood's testimony is not found in the record, nor is the question and answer from the deposition found copied into the statement of facts). When counsel for Johnson displayed the filed deposition to show the question and answer it was discovered that the question originally propounded had been changed by interlineation so that the inquiry it made was whether or not the note had been *delivered* to Logwood in his office. The change of the word *executed* to the word *delivered* eliminated the conflict between Logwood's testimony and that of the banker witness. The explanation of the change as it appears from the statement of facts is that counsel for Logwood delivered the deposition to Logwood after it was received from the court reporter and directed him to go over his testimony and determine whether or not the reporter rendered the testimony accurately, directing him to make the changes he found necessary to make his testimony accurate. Logwood undertook to do so, and instead of changing his response to the question, he changed the question propounded to make his recorded answer accurate.

■■■ It is apparent that cross-examination of the character Johnson's counsel desired to carry out was hampered when he unexpectedly found the question had been

changed. The predicament was in some degree the result of counsel's failure to examine the filed copy of the deposition before he began cross-examination. When the change was found, counsel for Johnson immediately insisted that Tex.R.Civ.P. 209 governing changes in deposition testimony by witnesses had not been complied with, and moved the court not to allow the change to be made in the deposition because of non-compliance with the rule. He then pointed out further that the change made was of a *question* and not of an *answer*. The statement of facts does not show the court ruled on the motion. Objections to the form, or to the manner of taking a deposition, are governed by Tex.R.Civ.P. 212. If, strictly speaking, it may be held the objection of Johnson's counsel was to the form of the deposition filed in court, Rule 212 was not complied with. The entire transaction occurred in the presence of the jury, and the discussions that ensued, as well as the direct and cross-examination, laid before the jury the question and answer as it originally appeared in the deposition. The episode and its development fastened the jury's attention on the fact that in his original deposition testimony, Logwood contradicted the statement of his principal witness on the place where the note was executed. Its worth for impeachment and contradiction purposes was not lost. Impeachment and contradiction was the original objective of the cross-examination. Though hampered, it can not be fairly said Johnson's counsel did not make his point. When the entire record in this court is examined, it doesn't appear that the limitation on cross-examination was of such nature as to have probably caused the rendition of an erroneous verdict.

Ten points of error are briefed. After careful consideration none are found to present reversible error and all are respectfully overruled. Appellant's motion to reconsider an order overruling his motion for extention of time to file a brief and appellee's first and second motions to dismiss the appeal have been informally carried with the case. The court is of the opinion that good cause for an extension of time to file applicant's brief was not shown by appellant's motion therefor, and that the appeal should have been finally dismissed at an earlier date. Since, however, the case was permitted to be submitted and argued, the further conclusion is reached that a decision on the merits, rather than dismissal, is in harmony with the general policy of the law giving litigants their day in court, and will not encroach further on the rights of the appellee to a prompt decision than a dismissal would at this time. The judgment of the trial court is affirmed.