**SUN OIL COMPANY, Appellant,**

v.

**Earnest WHITAKER, Appellee.**

No. 4363.

Court of Civil Appeals of Texas,
Eastland.

June 26, 1970.

Rehearing Denied July 17, 1970.

Stubbeman, McRae, Sealy & Laughlin, W. B. Browder, Jr. and James G. Noland, Midland, James K. Walker, Morton, Charles F. Heidrick and E. M. Cage, Dallas, for appellant.

Nelson, McCleskey & Harriger, George W. McCleskey, Lubbock, Earl R. Allison, Morgan Mill, Dwight R. Mann, Levelland, for appellee.

COLLINGS, Justice.

Sun Oil Company brought this suit seeking a permanent injunction against Earnest Whitaker and his tenant son-in-law, Doyle Henderson, enjoining them from interfering with plaintiff's production of not more than 100,000 gallons of fresh water per day from Whitaker's 267.7 acres of land to use in waterflooding plaintiff's oil and gas lease thereon. Sun contends that the lease gave it this right as a matter of law. Whitaker filed an answer and cross action seeking to enjoin Sun from producing fresh water from his land for waterflood purposes. He contends that the parties to the lease did not intend to grant Sun the right to use amounts of water which would materially affect the supply of water available for irrigation farming. He sought to recover actual and exemplary damages. The case was tried before a jury and based upon the verdict, judgment was rendered denying Sun its requested injuction against Whitaker and Henderson. The court also granted Whitaker a permanent injunction, enjoining Sun from producing fresh subterranean water from the land in question and decreed that Whitaker recovered from Sun actual and exemplary damages in the sum of $12,598.03 for fresh water already produced therefrom with six percent interest from the date of the judgment. Sun Oil Company has appealed.

This case is sequel to an earlier appeal in which Sun was denied a temporary injunction. See 412 S.W.2d 680 (Amarillo CCA, 1967, affimed 424 S.W.2d 216.)

The record shows that Whitaker is the owner of the surface of the land by virtue of a deed to him from L. D. Gann in 1948. The conveyance to Whitaker was by its terms subject to a 1946 oil, gas and mineral lease from Gann to Sun Oil Company. Appellant contends that the rights of the parties hereto are determined by the provisions of the above mentioned deed and oil gas lease, and in support of its contention particularly relies upon the following language in the 1946 oil and gas lease:

"Lessee shall have free use of oil, gas, coal, wood, and water from said land except water from Lessor's wells for all operations hereunder, and the royalty on oil, gas and coal shall be computed after deducting any so used."

In 1966, Sun drilled a water well into the Ogallala water formation on appellee's land and, after obtaining approval of the Railroad Commission of Texas, began injecting water produced therefrom into the

underlying San Andres oil formation to increase production of oil from such land. The evidence indicates that the water is produced from the only available source of water on the land and that such water is used exclusively for the benefit of the leased premises, the so-called Gann-Whitaker tract. The waterflood operation results in the production of additional oil. Sun contends that it has the right under its lease to use as much of the surface estate, including fresh water, as is reasonably necessary for the conduct of all operations authorized by the lease. The evidence shows that the Sun water supply well is equipped so that it cannot produce in excess of 100,000 gallons of water per day and that 966,703 barrels of water have been produced from the well. It has been stipulated by the parties that the secondary recovery of oil by the waterflood process is a reasonable and proper operation for the production of oil from the San Andres reservoir under the land in question; that it is a reasonable and proper operation by Sun to use Ogallala water as the extraneous or makeup water for injection into the San Andres reservoir under the land in conducting secondary recovery of oil by waterflood process, and that the location of the injection wells and the rates of water injection as conducted by Sun Oil Company on the land constitute reasonable and proper operations for the production of oil.

Special issue number 1 which inquired of the jury whether the use of water by Sun Oil Company for secondary recovery purposes was taking water from existing wells of appellee Whitaker, was not answered. The answers to special issues upon which the judgment was based were: (2) that the parties to the Gann-Sun Oil Company lease did not mutually intend for the lessee to use such quantities of water as would materially affect the supply which the surface owner could produce by wells, (3) that the use of fresh water by Sun for secondary recovery purposes

from the wells which it had drilled on said tract would materially affect the supply which the surface owner could produce by wells, (4) that it was not reasonably necessary for Sun to use water from the Ogallala formation underlying the Whitaker farm to waterflood the Gann lease, (5) that at the time the lease in question was executed there existed a custom in Hockley County for oil companies to use fresh water only in substantially smaller amounts than those needed for waterflood purposes, (6) that both parties to the lease knew of such custom prior to the time the lease was executed, (7) that the proposed use of fresh water by Sun for waterflood purposes will substantially reduce the value of the farm owned by Whitaker, (8) that the installation of waterflood facilities on the land by Sun destroyed a portion of Whitaker's growing crops, (9) that the reasonable cash market value of Whitaker's crops so destroyed was $431.00, (10) that the reasonable cash market value in Hockley County of the fresh water that Sun has produced from the Whitaker farm for waterflood purposes from the beginning of such waterflood to the date of trial was $9,667.03, (11) that Sun acted willfully and maliciously in producing fresh water from the Whitaker farm and using it for waterflood purposes and (12) that $2,500.00 was the amount of exemplary damages which should be adjudged against Sun.

Appellant presents numerous points contending that under the undisputed facts the Court erred as a matter of law in submitting any issue to the jury; erred in rendering judgment against it and in favor of appellee Whitaker; erred in admitting into evidence and considering for any purpose extrinsic evidence to vary, contradict or explain the intention of the lessor Gann and the lessee Sun as expressed in the language of their 1946 oil and gas lease and particularly erred in admitting into evidence testimony concerning the custom in regard to the amount of

water used in oil operations in and prior to 1946; erred in admitting evidence which tended to show that Sun's use of water from its supply wells on the leased premises "will materially affect" the amount of water which Whitaker could produce from his wells, evidence that Sun could obtain water for its waterflooding operations from some source beyond the boundaries of the leased permises, or testimony concerning the value of the Whitaker farm either before or after the commencement of Sun's waterflooding operation on the premises. Appellant further urged that there was no evidence or in the alternative insufficient evidence, to support the submission of any of the issues presented to the jury.

■ The principal question presented is whether the provision of the lease granting Sun the right to "free use of oil, gas, coal, wood and water from said lease except water from lessor's wells for all operations hereunder" includes the right to use such water for waterflood purposes. Both parties to this appeal agree that in construing an oil and gas lease the intention of the parties is controlling. The general rule of law is that a court in construing a contract will ascertain the intention of the parties from the language contained in the contract. 13 Tex.Jur.2d, page 288. Sun contends that the language of the lease is not ambiguous and grants to the lessee the right to use as much of the water as is reasonably necessary to produce oil and gas, and that the only limitation to lessee's right to use the water is stated in the lease as follows: "except water from lessor's well". As contended by Sun the record is conclusive that it has drilled and equipped its own water well and has not and does not propose to use any water from appellee Whitaker's wells. Appellant cites in support of its contention Carroll v. Roger Lacy, Inc., 402 S.W.2d 307, (C.C.A.1966, Ref. n. r. e.); Guffey v. Stroud, 16 S.W.2d 527, (Com.1929) and Brown v. Lundell, 162 Texas 84, 344

S.W.2d 863, (Sup.Ct.1961), in which the Supreme Court reaffirmed the holding in the Guffey case and stated that:

" 'The grant of the oil carried with it a grant of the way, surface, soil, water, gas and the like essential to the enjoyment of the actual grant of the oil.' Thus, says the lessee, his right of user extends to the subsurface water. We do not question that proposition but the right to use does not imply the right to damage negligently or unnecessarily."

None of the cases cited by appellant involve the right of an oil and gas lessee under a lease similar to the one here under consideration to use water from the leased land for waterflood purposes. Appellant admits that the specific question has not been passed upon in Texas.

■ Appellee contends that the meaning of the language of the free wood and water clause as used in the lease and as applied to the facts and circumstances in this case are uncertain and doubtful and that the court properly admitted evidence concerning the circumstances, conditions and customs existing at the time the lease was executed to determine the intention of the parties. We agree with appellee's contention. Appellant's points to the contrary are overruled. Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004, (1941); Ryan v. Kent, 36 S.W.2d 1007, (Com. 1931); Dauray v. Gaylord, 402 S.W.2d 948, (C.C.A.1966 Ref. n. r. e.); King v. City of Dallas, 374 S.W.2d 707, (C.C.A. 1964 Ref. n. r. e.). In Murphy v. Dilworth, supra, Justice Alexander speaking for the Supreme Court stated as follows:

"It is true that, even though a written contract be unambiguous on its face, parol evidence is admissible for the purpose of applying the contract to the subject with which it deals; and if by reason of some collateral matter an ambiguity then appears, proof of the facts and circumstances under which

the agreement was made is admissible, in order that the language used in the contract may be read in the light thereof for the purpose of ascertaining the true intention of the parties as expressed in the agreement. In other words, if the meaning of the language used in a written contract becomes uncertain when an attempt is made to apply it to the subject matter of the contract, though not otherwise uncertain, parol evidence is permissible to aid in making the application."

On the former appeal of this case the Amarillo Court of Civil Appeals, 412 S.W. 2d at pages 682, 683, in passing upon this question stated as follows:

"The phrase 'all operations hereunder' is not ambiguous on its face. However the meaning of that language when applied to the rights of the parties hereto become uncertain and doubtful. We do not think it can be said such language is not subject to more than one reasonable meaning. Contrary to Sun's contention 'all operations hereunder' has not been given a settled, legal construction. It does not have an exact meaning. The lease does not specifically grant the lessee the right to engage in secondary recovery by the process of waterflooding. To hold the phrase under consideration is not subject to more than one reasonable interpretation, we would be compelled to hold as a matter of law that the lessee is entitled to free water for waterflooding as an operation under its lease rights. We think such a holding would be untenable. We therefore conclude the trial court correctly admitted evidence pertaining to the conditions, and circumstances under which the oil and gas lease was executed."

The evidence concerning the circumstances, conditions and customs which existed at the time of execution of the oil and gas lease in 1946 containing the "free wood and water clause" was, in effect: that such clause was usual and customary in oil and gas leases executed at that time and had been used by Sun in all its leases as early as 1926; that the only uses which oil companies were or had been making of water at that time and in that portion of the state under the wood and water clause were for drilling operations, supply operations for water boilers and reworking operations and that none of these operations used a large amount of water; that at the time of the execution of the lease waterflooding was unknown to landowners, farmers, bankers and attorneys in that part of the state and that at that time neither party to the lease knew of the existence of the underground water deposits here involved. Although Sun Oil Company personnel knew of the waterflooding practice for several years prior to the date of this lease it made no effort to specifically provide for the right to use water for that purpose. The evidence indicated that the consideration for the lease was commensurate with the consideration paid for any lease on a farm with insufficient water for waterflooding or irrigation. The evidence indicated that waterflooding was not practiced in the west Texas area in 1946 although prior to that date waterflooding had been practiced in some parts of Texas, but that knowledgeable people in the Hockley County area became aware of secondary recovery by waterflooding several years after the date of the lease here under consideration. As above indicated, at the time the lease was executed in 1946 all operators in Hockley County and in surrounding territory had used fresh water only for drilling operations and other activities which did not require appreciable or substantial amounts of fresh water; that the amount of water needed for drilling eight oil wells is three acre feet and that Sun Oil Company proposes to use 451 acre feet for its waterflood project.

The Ogallala formation is a closed isolated underground reservoir in that there is

no replenishment of such water except from moisture which penetrates down into it after falling on the surface. The fresh underground water with which Whitaker irrigates his crops and secures his domestic water and that which Sun proposes to use comes from the Ogallala formation which is the only source of water in the area of Whitaker's farm. There was evidence to the effect that a water well drilled into the Ogallala formation in close proximity with other wells in the same formation will take part of the water from those wells; each well depends upon its supply from an area spread out from the well, and the longer a well is pumped the broader this sphere of influence spreads. The evidence indicates that hydrological records show that the water level in the vicinity of the Whitaker farm has declined over a period of years, and there was expert testimony to the effect that this water level will continue to decline and that Sun's proposed use will considerably shorten the useful life of Whitaker's water supply; that this is true even if Sun uses only one well and Whitaker drills no more irrigation wells. The evidence indicated that Sun's waterflooding project would ultimately consume 4,200,000 barrels of Ogallala water and although there is some evidence to the contrary that if Sun uses such amount of water without drilling other supply wells Whitaker's water supply will disappear at least eight years more quickly than it would in the absence of Sun's activities. The evidence also indicated that if the development of water on the land surrounding Whitaker occurs, Sun's activities would cause the effective life of Whitaker's water to be reduced from 18 years to 10 years.

In answer to special issues numbers 2, 3, and 7, the jury found that the parties to the lease did not mutually intend for the lessee to use such quantities of water as would materially affect the supply which the surface owner could produce by wells; that the use of fresh water by Sun for waterflood purposes would materially af-

fect the supply which the surface owner could produce by wells; that at the time the lease was executed there existed a custom in Hockley County for oil companies to use fresh water in their operations only in substantially smaller amounts than that needed for waterflood purposes; that both parties to the lease knew of such custom prior to the time the lease was executed; and that the proposed use of fresh water by Sun for waterflood purposes will substantially devalue the farm owned by Whitaker.

■ In numerous points appellant contends that there was no evidence to support the submission of such special issues, and that there was insufficient evidence to support the answers of the jury thereto and that such answers are against the great weight and preponderance of the evidence. These points are overruled. As shown by the facts and circumstances in evidence, as heretofore summarized, there was evidence supporting the submission of each of the issues, and although there was some evidence to the contrary, the evidence considered as a whole was sufficient to support the findings of the jury in answer thereto and such answers are not against the great weight and preponderance of the evidence.

■ In answer to special issue number 4 the jury found that it was not reasonably necessary for Sun to use water from the Ogallala formation underlying the Whitaker farm to waterflood the Gann lease. Appellee urges points contending that the court erred in admitting any evidence tending to show that Sun could afford to purchase water for its lease waterflood operation from some source beyond the boundaries of the Whitaker land, that there is no evidence or insufficient evidence to support the submission of special issue number 4 to the jury and that the answer to such issue is contrary to the great weight and preponderance of the evidence. These points are overruled. Appellant's argument contending that the

court erred in admitting evidence tending to show that it could purchase such water from some source beyond the boundaries of the lease is based upon the assumption that Sun had the right under the lease to use fresh water from that land for waterflood purposes. We have already held that contention untenable. It is true as contended by Sun that it is reasonably necessary for Sun to use Ogallala water to waterflood the Gann lease but there is ample evidence showing that Ogallala water could be purchased and used by Sun from other sources than the water from Whitaker's land.

In appellant's 21st point it is contended that the court erred in entering judgment against Sun for exemplary damages. It is true as contended by appellant that exemplary damages will not be granted merely because of the commission of an unlawful act. Ware v. Paxton, Tex., 359 S.W.2d 897. However the record in this case shows that Sun drilled a water well on Whitaker's property over strenuous objections and has since unlawfully produced almost 1,000,000 barrels of water of a total value of $9,667.03 which it has used in its waterflooding operations. At the time such well was drilled this lawsuit was pending and the trial court had denied Sun's request for a temporary injunction. The drilling of the well by Sun was not only unlawful but was done intentionally and willfully and with full knowledge that the District Court had made a judicial determination that Sun had no legal right to use Whitaker's water for waterflood purposes. It is held that a defendant may be compelled to respond in exemplary damages if the act causing actual damages is a wrongful act done intentionally in violation of the rights of the plaintiff. Tennessee Gas Transmission Company v. Moorhead, 405 S.W.2d 81, (C.C.A.1966, Ref. n. r. e.).

We have considered all of the points presented by appellant and find them to be without merit. The judgment is affirmed.