James SHAW, Banking Commissioner, etc., v. A. J. ROSE et al.

No. 1268—5337.

Commission of Appeals of Texas, Section A. April 23, 1930.

---

L. C. Sutton and John W. Goodwin, both of Austin, and Joe T. Goodwin, of Jacksonville, for plaintiff in error.

W. A. Hutchison, of Paris, for defendant in error.

HARVEY, P. J.

This case presents the same question as that involved in Shaw, Banking Commissioner, v. McBride, 27 S.W.(2d) 121, this day decided. The decision in the latter case controls the disposition of this case. We therefore recommend that the judgment of the trial court and that of the Court of Civil Appeals [11 S.W.(2d) 547] be affirmed.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.

---

DUFF v. DU BOSE et al.

No. 1356—5496.

Commission of Appeals of Texas, Section A. May 5, 1930.

Kennerly, Williams, Lee, Hill & Sears and Fred L. Williams, all of Houston, for plaintiff in error.

Wolters, Blanchard, Woodul & Wolters and Walter F. Woodul, all of Houston, for defendants in error.

CRITZ, J.

This suit was instituted in the district court of Ft. Bend county, Tex., by Mrs. Du Bose et al. against R. C. Duff to cancel a mineral and oil lease executed on April 29, 1919, on a tract of 50 acres of land situated in Ft. Bend county, Tex. The case seems to have been removed to Harris county, Tex., for trial. The district court rendered judgment for Mrs. Du Bose et al., canceling the lease upon the pleadings and admissions of Duff. On appeal the judgment was affirmed by the Court of Civil Appeals. 14 S.W.(2d) 911. The case is before the Supreme Court on writ of error granted on application of Duff.

We hereafter refer to the parties in the order in which they appeared in the trial court, to Mrs. Du Bose et al. as plaintiffs, and to R. C. Duff as defendant.

The Court of Civil Appeals makes a very comprehensive and exhaustive statement of the nature and result of the suit, together with the contents of the lease, and a pooling agreement. We refer to that opinion for a full statement of the case. We, however, make the following additional statement in order that this opinion may be complete within itself.

The pleadings of the defendant are very voluminous and cover many pages in the transcript, but they affirmatively show the following express admissions:

(a) That the lease in question was dated April 29, 1919, and covered the tract of 50 acres of land in Ft. Bend county, Tex., in controversy in this suit, belonging to the plaintiffs.

(b) That the lease was for the purpose of exploring the land for the production of oil, gas, and other minerals.

(c) That the lease contained the following provisions as shown by "Statement of the Case" in defendant's brief:

"That lessee should, within ninety (90) days from that date begin operations for the drilling of a well on said land and conduct same with reasonable diligence in a bona fide attempt to discover oil or gas until such well might be completed or abandoned.

"That in case lessee should fail to comply with the foregoing stipulations in the above paragraph, he should forfeit back to lessors all his rights thereunder.

"That after the completion of said well, lessee should have the right to make as many more attempts to find oil or gas as he should please, provided that such attempts should be successive in the sense that until oil or gas be found not more than sixty (60) days should elapse between the cessation or abandonment of work on one well and the beginning of work on another; and provided further that after the completion or abandonment of the first or any subsequent well, if same should prove unproductive, lessee should have the right at any time within sixty (60) days after the completion or abandonment of such well to pay to lessors stipulated rentals per acre, and in case of such payment or deposit, the time of lessee, his heirs or assigns, in which to begin the drilling of the next well might be extended for a period of six (6) months to run from the date of such payment, and that similarly lessee might from time to time make payments on or before the expiration of each such extension of six (6) months, and thereby extend the time in which to begin another well on said premises, provided the aggregate of such extensions should not exceed a period of three (3) years to date from the completion or abandonment of said first well or subsequent wells; and provided further that said Duff, his heirs or assigns, should have the right to pay and retain such extension on the whole or parcels of said land to be designated by him, and any tract or tracts on or with reference to which said Duff, his heirs or assigns, should fail to make payment within the time stipulated should thereby be released and all rights thereunder be forfeited to lessors, their heirs or assigns.

"That if oil or gas be discovered on said land in paying quantities, lessee should have the right to produce same, and such right should remain in effect so long as oil, gas or other minerals 'can be produced from same in paying quantities, and provided lessee shall in such event further develop the said land for the production of oil, gas or other minerals as may be justified under the circumstances. If lessee fails to comply with this provision, this lease shall terminate.'

" 'At any time after the completion of said well, lessee shall have the right to surrender this lease, and on such surrender shall be discharged from all obligations hereunder, but upon such surrender lessee shall have the right to retain any producing well or wells, together with the five-acre tract, or tracts, on which any such wells are located, it being agreed that each producing well shall earn and hold five acres, the same to be laid off as nearly in the form of a square with the well in the center, as is possible. Lessee shall have the right to drill as many more wells in

such retained tracts as he pleases so long as oil, gas and other minerals can be produced from any such tracts in paying quantities, provided, however, that lessee shall pay a royalty as herein stipulated on the production from any such retained tracts.'

"That if oil be produced in paying quantities by operations thereunder, lessee should deliver to lessor one-sixth of the oil saved from that produced.

"Royalties were provided as to gas and sulphur and all other minerals.

"That if any well producing oil in paying quantities should be brought in on adjacent property within one hundred (100) feet of the line of any of the tracts covered hereby, lessee should drill such offset well on the tracts above leased as should be necessary to properly protect the interests of the lessors and of the lessee thereunder.

"That failure to do and perform any or all of the conditions set forth in said instrument rendered same null and void at the option of lessors.

"That all conditions and terms thereof should extend to the heirs, executors, legal representatives and assigns of all the parties thereto."

(d) That after the above lease was made, the Texas Company by a contract in writing, executed by all parties interested, took over the defendant's obligations under the instant lease, together with certain other leases on other lands in a pooling agreement, the material terms of which are set out in the opinion of the Court of Civil Appeals.

(e) That under the terms of the pooling agreement the Texas Company had the option to terminate the same at any time it saw fit by surrendering the several leases back to the interested parties jointly, or, if they did not want a joint reassignment, then the Texas Company had the right to reassign each lease to the original party under whom the Texas Company held.

(f) That the Texas Company operated the several leases under the pooling contract as one lease until about November 9, 1925, when it notified all parties interested that it was withdrawing from the pooling agreement, and would no longer operate thereunder, and later, on December 3, 1925, the Texas Company reassigned the instant lease to the defendant by an instrument in writing.

(g) That during the time the Texas Company operated this lease under the pooling agreement it drilled two wells on this land. The first well, known as well No. 9, was drilled to a depth of 3,892 feet and came in with a small production, but was abandoned in March, 1922, and has not been operated since. The second well, known as well No. 11, was drilled to a depth of 4,805 feet and was abandoned a dry hole in May, 1924.

(h) That since this lease was reconveyed to the defendant in December, 1925, by the Texas Company, there has been a complete and absolute cessation of its use for the purpose of mineral exploration, development, and production, and no rentals have been paid.

(i) That the pooling agreement provided for a suspension of the drilling obligations imposed by the lease contract, and substituted the obligations imposed by the pooling agreement, but the pooling agreement, contains no provision suspending the above obligations under the lease contract beyond the life of the pooling agreement.

As shown by the opinion of the Court of Civil Appeals, the defendant relies alone on the operations and explorations of the Texas Company under the pooling agreement to save the life of the instant lease. The defendant's contentions are untenable. The pooling agreement by its terms substituted its own obligations for the obligations of the lease with reference to development, but as shown above such agreement expressly provided that the Texas Company could terminate the same at any time it saw fit. The pooling agreement contained no provision, express or implied, which suspended the obligations of the lease contract beyond the life of the pooling agreement. It follows that when the pooling agreement was terminated, and the lease reconveyed to and accepted by the defendant, the obligations of the lease contract again obtained. When the lease was reconveyed to the defendant there was no production of any character from the land, and there has been no production nor effort to obtain production since it was reconveyed to the defendant, and neither have any rentals been paid or tendered. Such being the case, the lease has forfeited and terminated by its own terms.

Furthermore if it should be admitted that under the terms of the several contracts, that is, the lease, and the pooling agreement, construed together, the bringing in by the Texas Company of well No. 9, shown above, with a small production, operated to end the express forfeiture provisions of the lease, still it is terminated and ended as a matter of law because since it was reconveyed to the defendant on December 3, 1925, there has been absolutely no mineral exploration, development, or production thereon, and the defendant has failed and refused to do anything whatever to explore or develop the land for the production of oil, gas, or other minerals. W. T. Waggoner Estate v. Sigler Oil Co. (Tex. Sup.) 19 S.W.(2d) 27, 32. It is now the settled law of this state that where a mineral lease conveys no absolute title, but only a determinable fee, "there can be no complete cessation of the use of the leased land for purposes of mineral exploration de-

velopment, and production, save at the cost of loss of the lessee's estate." Waggoner, etc., v. Sigler, etc., supra.

The lease in question here was made for the purpose of exploring this land for the production of oil, gas, and other minerals. It conveyed no absolute title, but only a determinable fee. Therefore the defendant, having ceased to use the leased premises for the purposes for which the lease was made, has lost the leasehold estate.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.