TDC ENGINEERING, INC., Appellant,

v.

Gene DUNLAP, Appellee.

No. 11–84–167–CV.

Court of Appeals of Texas,
Eastland.

Feb. 14, 1985.
Rehearing Denied March 14, 1985.

James C. Gordon, McMahon, Smart, Surovik, Suttle, Buhrmann & Cobb, Abilene, for appellant.

Lance Hall, Sweetwater, for appellee.

DICKENSON, Justice.

The landowner, Gene Dunlap,[1] sued the operator of an oil and gas lease, TDC Engineering, Inc.,[2] for "an unnecessary use" of the surface estate (injecting salt water in an unproductive oil well on land owned by Dunlap). Following a trial by jury, judgment was rendered that Dunlap recover $57,150 for diminution of the market value of his 1143.5-acre tract of land; $12,000 for occupancy of the 40-acre tract upon which the salt water injection well was located; and $60,000 as exemplary damages. TDC Engineering, Inc. appeals. We reverse and render.

The verdict of the jury can be summarized as set forth below:

1. "We do" find that TDC Engineering, Inc. made an unnecessary use of the entire surface estate belonging to Gene Dunlap on or about February 2, 1983, and thereafter, in its operation of injecting the salt water in the well on land owned by Gene Dunlap.

2. "We do" find that such unnecessary use was a proximate cause of the loss of value to the 1143.5 acres of land belonging to Gene Dunlap.

3. "$57,150.00" is the difference in market value as a result of the unnecessary use of that land.

4. "We do" find that TDC Engineering, Inc. has entered upon Gene Dunlap's 40 acre tract of land which surrounds the salt water injection well without consent or legal right.

5. "We do" find that this entry was a proximate cause of injury.

6. "$12,000" would compensate Gene Dunlap for the injury caused by the entry of TDC Engineering, Inc. on this 40-acre tract of land.

7. "We do" find that this entry constituted gross indifference to the rights of Gene Dunlap.

8. "$60,000" should be awarded against TDC Engineering, Inc. as exemplary damages.

9. "None" is the reasonable value of improvements made by TDC Engineering, Inc. on the 40-acre tract.

10. "No," the casing and other equipment in the salt water disposal well cannot be removed without permanent damage to the property.

Appellant has briefed 32 points of error, complaining of: (1) the trial court's overruling of its motion for instructed verdict; (2) the trial court's overruling of its motion for judgment non obstante veredicto; (3). the issues which were submitted to the jury; (4) the defensive issues and instructions

---

1. Gene Dunlap died after the rendition of judgment in the trial court. Pursuant to TEX.R. CIV.P. 369a this Court will proceed to adjudicate the cause and render judgment "as if all the parties thereto were living."

2. TDC Engineering, Inc. is a wholly owned subsidiary of Texas Drilling Company. Scott Taliaferro is President of both corporations. He also owns certain oil and gas leases which are involved in this lawsuit and which are being operated by TDC Engineering, Inc.

which were requested and refused; and (5) the trial court's overruling of objections to the issues and instructions which were submitted to the jury. We sustain the second point[3] and the thirty-second[4] points of error.

In 1978, Gene Dunlap purchased all of the surface plus an undivided mineral interest in this 1143.5-acre tract of land from Billy Bowden. Bowden's rights in this property were subject to an oil and gas lease owned by Taliaferro. The James Petroleum Trust owns an undivided one-sixteenth mineral interest in a 700-acre tract of land. This interest covers the portion of Dunlap's property where the four oil and gas wells are located, and it also covers the 40-acre tract where the salt water disposal well is located. Taliaferro owns the leasehold estate under the James Petroleum Trust in addition to his rights under the Bowden Lease. The other undivided mineral interests are leased to Maguire Oil Company and operated by TDC Engineering, Inc., but there are separate leases for the various tracts of land.

The Bowden lease contains a "Pugh Clause" which provides that:

> Any provisions above to the contrary notwithstanding, this lease shall ipso facto terminate three (3) years after the date of the expiration of the primary term save as to the number of acres allocated by the Railroad Commission of Texas for each well from which oil and gas in paying quantities is being produced and sold; however, as to all wells from which oil and/or gas is being produced and sold in paying quantities said lease shall ipso facto terminate as to all formations below the then producing formations.

Since the lease was effective August 27, 1976, for a three year primary term, the Pugh Clause became effective on August 27, 1982. At that time the Bowden lease was continued in effect as to 40 acres around each producing well. It terminated as to the 40-acre tract upon which the salt water injection well is located. Dunlap advised TDC Engineering, Inc. and Taliaferro that they did not have the right to inject salt water in the nonproductive well on this 40-acre tract without his consent and that they should either transport the salt water off his property for disposal or make an agreement with him and pay him for the right to dispose of the salt water by injection into the well on his property. TDC Engineering, Inc. and Taliaferro maintained the right to dispose of the salt water by injection into the well on Dunlap's property without his permission, and Dunlap filed this lawsuit.

We agree with Dunlap that the Bowden lease did not give the lessee or his operator the right to inject salt water into the nonproductive well. We also agree with Dunlap that, since the Maguire Oil Company leases cover different tracts of land, they do not give the lessee or its operator the right to dispose of salt water produced from some of the leases on land covered by a different lease.

We do not, however, agree with Dunlap as to the operator's claims under the oil and gas lease from the James Petroleum Trust, and we hold that the oil and gas lease from the James Petroleum Trust gave the lessee, Taliaferro, and his operator, TDC Engineering, Inc., the right to dispose of the salt water in the injection well involved in this lawsuit. It is rare that mineral rights to an undivided one-sixteenth interest would have this result, but it must logically follow from the application of well established legal principles.

*Brown v. Lundell*, 162 Tex. 84, 344 S.W.2d 863 at 865 (1961), affirms the rule that the operator of an oil and gas lease "has the right to use so much of the land, both surface and subsurface, as is *reasonably necessary* to comply with the terms of

---

3. Point of Error Two: The trial court erred in overruling Defendant's Motion for Judgment Non Obstante Veredicto with respect to plaintiff's cause of action in trepass.

4. Point of Error 32: The trial court erred in refusing to grant Defendant's Motion for Judgment Non Obstante Veredicto with respect to plaintiff's cause of action in trespass to try title.

the lease contract." (Emphasis added) *Brown* states, 344 S.W.2d at 867:

It was necessarily incident to production operations here that the salt water be separated from the oil and that it be disposed of . . . .

The ultimate issue was whether (the operator of the oil and gas lease) was negligent in the way and manner in which he disposed of the salt water.

■ *Sun Oil Company v. Whitaker,* 483 S.W.2d 808 (Tex.1972), recognizes the rule that the mineral estate is the "dominant estate" and that the right to use so much of the premises as is "reasonably necessary" does not obligate the oil and gas operator to use alternative methods unless they "may be employed *on the leased premises* to accomplish the purposes." 483 S.W.2d at 812. See also *Ball v. Dillard,* 602 S.W.2d 521 at 523 (Tex.1980), which notes that: "A grant of minerals would be worthless to a grantee if he could not enter upon the land for exploration and extraction of the minerals granted."

■ *Cox v. Davison,* 397 S.W.2d 200 at 203 (Tex.1965), discussing the right of a tenant in common of an undivided mineral interest, such as the James Petroleum Trust and its lessee, to make such use of its property as it sees fit, said:

(T)he mineral estate is such that necessarily the rights of one cotenant must be interferred with if another cotenant is to be permitted to exercise those rights properly belonging to him.

Since TDC Engineering, Inc. was the operator for the lessee of the James Petroleum Trust lease, it had the right to produce the oil belonging to that undivided mineral interest's owner and to make such reasonable use of the surface estate related to it as is necessary to produce the oil. The evidence conclusively establishes that the operator must dispose of the salt water (which is produced with the oil) in order to produce the oil and that there is no alternative method for disposing of the salt water on the leased premises covered by the oil and gas lease from the James Petroleum Trust. Consequently, the recovery for trespass cannot be allowed.

■ Dunlap failed to secure findings that the salt water injection well was not reasonably necessary. See Annotation, "What Constitutes Reasonably Necessary Use of the Surface of the Leasehold by a Mineral Owner, Lessee or Driller under an Oil and Gas Lease or Drilling Contract," 53 A.L.R.3d 16–174 (1973). The finding of an "unnecessary use" is not sufficient [5] in view of the objections to the charge and the tender of proper issues and instructions. The motion for judgment non obstante veredicto should have been granted.

The judgment of the trial court is reversed, and this Court renders judgment that Gene Dunlap take nothing and that TDC Engineering, Inc. recover its costs of suit.

---

**5.** *Texaco, Inc. v. Faris,* 413 S.W.2d 147 (Tex.Civ. App.—El Paso 1967, writ ref'd n.r.e.), is not in point because there was a lease in *Faris* which set forth the uses of the surface and specified the extent of such uses. *Faris* recognized that in the absence of such an express lease provision, the extent of use is said to be that which is "reasonably necessary." Since Dunlap's lease had terminated as to the 40-acre tract upon which the salt water injection well is located, those lease provisions are not applicable. The operator had the right in this case to make reasonable use of the surface to produce the oil belonging to the 1/16th mineral interest belonging to the James Petroleum Trust.