Howard HEIKKILA, a/k/a Howard L. Heikkila, and Reino Heikkila, a/k/a Reino W. Heikkila, Plaintiffs/Appellees,

v.

Russell CARVER and Norma Carver, Defendants/Appellants.

No. 15726.

Supreme Court of South Dakota.

Argued Oct. 6, 1987.

Decided Dec. 16, 1987.

Max Main of Bennett and Main, Belle Fourche, for plaintiffs and appellees; Donn Bennett of Bennett and Main Belle Fourche, and James S. Nelson, Rapid City, and Deming Smith of Davenport, Evans, Hurwitz & Smith, Sioux Falls, on brief.

John J. Delaney of Banks, Johnson, Johnson, Colbath & Huffman, Rapid City, for defendants and appellants.

WUEST, Chief Justice.

This is an appeal from a declaratory judgment concerning the rights and obligations of the parties under an arbitration provision in a contract for deed. We affirm in part and reverse in part.

Howard and Reino Heikkila (Heikkilas) owned a 5,920 acre ranch in Harding County, South Dakota. In 1971, they entered into an oil and gas lease with Inland Oil & Gas Corporation that covered 1,840 acres on the ranch. The granting clause provided that the lessor:

"... grants, leases, and lets exclusively
. to Lessee the land described below for
the purpose of investigating, exploring

for, drilling for, producing, saving, owning, handling, storing, treating and transporting oil and gas *together with all rights, privileges and easements useful for Lessee's operations on said land and on lands in the same field* with a common oil and gas reservoir, including but not limited to the rights to lay pipelines, build roads, construct tanks, pump and power stations, power. and communication lines, houses for its employees, and other structures and facilities and drill for, produce and use fresh water."

Paragraph seven of the lease provided that: "Lessee shall pay for damages caused by Lessee's operations to *growing crops, buildings, irrigation ditches and fences* ..."

In 1977, the 1,840 acres became a part of the West Short Pine Hills Shannon Gas Field. The field now covers over 29,000 acres.

In 1979, the Heikkilas sold the 5,920 acre ranch to Russell and Norma Carver (Carvers) under a contract for deed. The contract reserved a mineral interest in all real property conveyed with the ranch. The portions of the contract relevant to this case stated:

III. "Excepting, however, from this conveyance and reserving to the Sellers, their heirs, successors and assigns, an undivided ninety percent (90%) interest, including future interests, if presently discernible, now held by the Sellers, in all minerals of whatsoever nature, (including, but not limited to: oil, gas, natural gas, hydrocarbons, coal, uranium, plutonium, or any valuable deposit whether now or hereafter known) in, on, under or that may be produced from said real property, together with the right to prospect for, mine and/or drill for said minerals therefrom, and the right for the aforesaid purposes to enter upon said property, and erect, construct, maintain and operate thereon buildings, structures, machinery, installations, equipment, lines, roads and other facilities being necessary by Sellers, *and to use the surface and such surface of all real property in any manner necessary by*

*Sellers*, to aid in all or any of the aforesaid operations, and restoring, processing, removing, and transporting of any of said minerals, together with the right to drill on said property for water, and to the free use of water so obtained in any of the aforesaid operations, *except that Sellers, heirs, etc., and/or mineral lessee shall pay the amount of the physical damage, to be determined by arbitration in event of disagreement, to the real. property or improvements caused by Sellers' said operations.* It is specifically understood that all sand, gravel and water goes to the surface owner and are not to be considered minerals ... It is mutually understood by the parties hereto that were it not for this reservation from the lands herein granted, and all of the minerals therein contained, this conveyance would not have been made."

XV. "It is fully understood by the Buyers that the property is subject to development for natural gas and the potential development of other minerals. So it is understood at the present time that there have been certain pipe line laid for the gathering system and that there may be more wells drilled for full development of the field in the future. *It is further understood that the rights of the surface damages due from the mineral owners or their assign shall be payable to the Buyers, however [under] the rights held by the mineral lessees for the use of the surface, oil, gas, and water together with any easments and right of ways necessary for the development are hereby retained and the Buyers will do nothing unreasonable to stop the development of this field."*

Carvers sought damages under the terms of the arbitration provision of the contract for deed. Heikkilas brought a declaratory judgment action asking the court to decide what damages from oil and gas operations the Carvers could bring to arbitration. The trial court held the Carvers could recover damages involving the four items listed in the surface damage clause of the lease and damages from activities on the ranch that were not reasonably necessary to develop Heikkilas' mineral interest.

Carvers could not, however, collect damages to the ranch resulting from operations conducted elsewhere in the field, whether those operations were necessary to develop the Heikkila mineral interest or other portions of the field. The Carvers argue they are entitled to all damages, including any that result to the ranch from activities conducted outside the ranch.

## I. Rights of the Mineral Developer

■ Ownership of oil and gas· rights carries with it by implication the means of enjoying the mineral estate. The mineral owner has the right to enter upon and make reasonable use of the surface for exploration and development of mineral deposits. E. Kuntz, Oil and Gas, § 3.2 (1987). A severed mineral interest normally includes development and executive rights, i.e., the right to drill or execute an oil and gas lease. 1 H. Williams & C. Meyers, Oil and Gas Law, § 202.2 (1986).

■ An oil and gas lessee is entitled to do whatever is expressly provided for in the lease. Moreover, an oil and gas lease also carries with it the incidental or implied right of the lessee to use as much of the land's surface and in such manner as is reasonably necessary for him to effectuate the purposes of the lease and perform the obligations imposed by the lease. *Ricks Exploration Co. v. Oklahoma Water Resources Bd.*, 695 P.2d 498 (Okla.1984); *Sanford v. Arjay Oil Co.*, 686 P.2d 566 (Wyo.1984); *TDC Engineering, Inc. v. Dunlap*, 686 S.W.2d 346 (Tex.App.1985).

■ In this case, the granting clause of the lease gives the lessee the right to conduct specific types of operations on the leased 1,840 acres. It also grants "all rights, privileges and easements useful for Lessee's operations on said land *and on lands in the same field with a common oil and gas reservoir.*" Thus, the lease allows activities on the leased land that benefit other mineral interests without benefiting the Heikkila mineral interest. There is, however, no right to operate on other parts of the ranch, and any activity on another part of the ranch would trespass outside the scope of the lease.

## II. Liability For Damages

■ Inevitably, oil and gas exploration and development will damage the surface of the land where the activities are conducted. Such activities may also affect resources below the surface, such as groundwater. When a lease is involved, the parties may include a provision covering surface damages. *Williams & Meyers, supra*, § 218.11. Even if there is no special clause in the lease, general oil and gas law provides that the lessor or surface owner may recover damages caused by activities not "reasonably necessary" to the object of the contract. *See, Williams & Meyers, supra*, § 218.7; 4 W. Summers, Oil and Gas, § 652 (1967). Moreover, apart from liability based on either a surface damage clause or the theory of unreasonable surface use, liability can also be based on theories of tort law or breach of statutory duties. *See Williams & Meyers, supra*, § 218.10; *Summers, supra.*

■ In this case, Carvers are entitled to damages from the lessee under the surface damages clause of the lease and can recover for damage to "growing crops, buildings, irrigation ditches and fences." Damages resulting to these four items are payable whether the activities of the lessee that caused these damages were reasonably necessary or not. Moreover, such damages caused by "lessee operations" are payable whether the activity is conducted on the leased land or on other land outside the ranch and whether the resulting· damages occur on the leased land or on another part of the ranch.

■ Principles of law govern the extent of lessee's liability to the surface owner for damages not covered by the lease. Except for the four items mentioned in the lease, damages that occur to the ranch from lessee's operations *on the leased land* are not actionable unless the use or activity was not reasonably necessary to effectuate the purposes of the lease. *See Williams & Meyers, supra; Summers, supra.* Except for the four items mentioned in the lease, recovery for damage to the ranch from

operations conducted *outside* the ranch, would depend on general principles of tort law or statute. *See Williams & Meyers, supra,* at § 217.

The lessee is not being sued in this action, but the effect of the lease and an understanding of oil and gas law principles is relevant to this action because the Heikkilas claim the Carvers are limited to damages that ultimately are payable by the lessee, i.e., only those damages covered by the lease and those other types of damages that result from an unreasonable use. The Carvers argue the contract for deed creates liability exclusive of the lease and general principles of mineral or tort law. Where the effects of the lease and general principles of mineral and tort law meet the provisions of the contract for deed is where the controversy lies in this case.

### III. Contract For Deed

The trial court held that under the contract for deed the Carvers are not entitled to demand all damages to the ranch at arbitration. The trial court stated *first* that the Carvers were not limited to the damages under the lease because the contract for deed provided for damages not limited to the four items listed in the lease. The trial court, however, stated *second* that the Carvers could not recover all damages to the ranch from Heikkilas' or the lessees' operations on the ranch. The court noted the contract for deed gave the Heikkilas the right to develop their mineral interest. The court then held that principles of oil and gas laws should limit Heikkilas' liability to only those damages caused by activities not "reasonably necessary to develop and produce Heikkilas' mineral interest." The trial court stated *thirdly* that the Carvers could not recover from Heikkilas for damages from activities conducted outside the ranch and "which did not produce Heikkila reserved mineral interest."

■ The trial court is correct on the first question. Under the contract, Carvers are not limited to damages to the four items listed in the lease. The contract for deed did not limit the categories of damages that Heikkilas would pay.

■ The trial court erred, however, under the second question. The court is correct when it notes the contract allows Heikkilas to develop their mineral interest. The court is also correct in holding the "reasonable use" doctrine allows the mineral owner to conduct activities "reasonably necessary to develop and produce Heikkilas' reserved mineral interest." The "reasonable use" doctrine applies to both the lessee and mineral owner. *Kuntz, supra,* § 3.2. However, the contract provided in paragraph III that "... sellers, heirs, etc., and/or mineral lessee shall pay the amount of physical damage ..." The trial court held "the terms of the contract contemplated reasonable and necessary use of the land by Heikkilas in developing their reserved mineral interest." We hold the plain language of the contract for deed contemplates payment for damages whether the activity was reasonably necessary or not.

Paragraph XV does not affect the meaning of paragraph III. The lessee retained rights to conduct operations on the leased property to develop the Heikkilas' interest and other property in the field. Damages are payable from the lessee to the surface owner only if done to the four items listed in the lease or if the damages were in other areas and were not "reasonably necessary." Generally, the "reasonable use" doctrine also applies to mineral owners. However, the contract for deed created a broader independent right against the Heikkilas, and all "physical damage" from "seller operations" become payable by Heikkilas whether the surface use was reasonably necessary or not. Therefore, for example, whether construction of a road is "reasonably necessary" is not important under the contract for deed. It is only important to determine *whether the lessee will be the ultimate payee of the damages.*

■ The trial court is correct under the third question. Heikkilas are not liable for damages that occur due to the lessee's development outside the ranch, regardless of whether those activities benefit the Heikkilas' mineral interest. There is no

provision in the contract that such off-ranch activities will be considered "seller operations." "Seller operations" include only those activities conducted by the lessee on some part of the ranch itself, and such activities are compensable by Heikkilas. The lessee may be liable for off-ranch activities that cause damages, but liability depends upon the application of general tort law principles or statute.

### IV. Grasses as a Growing Crop

A final issue is whether "grasses" constitute a growing crop. Carvers requested the trial court give directions to the arbitration panel that grasses should be considered a growing crop. The trial court held that grasses may or may not be a growing crop, depending on the circumstances, and the panel should be free to make the determination on its own.

Based on our decision in this case, this issue is not relevant. Under the contract for deed, Heikkilas must pay for damages regardless of whether the damages are covered under the lease or result from a reasonably necessary surface use. Whether grass is considered a growing crop is important only to determine if the lessee may be ultimately liable for damages. The lessee, however, is not a party to either the arbitration agreement or the appeal before this court.

MORGAN and SABERS, JJ., and ANDERSON, Circuit Judge, concur.

MILLER, J., concurs in result.

ANDERSON, Circuit Judge, sitting for HENDERSON, J., disqualified.