NO. 07-05-0179-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MAY 17, 2005


______________________________



In re T.R.G. 


_________________________________



FROM THE COUNTY COURT OF RANDALL COUNTY;



NO. 2005-M-055; HON. JAMES ANDERSON, PRESIDING


_______________________________


 

ABATEMENT AND REMAND


_______________________________



Before QUINN, REAVIS and CAMPBELL, JJ.

 After a hearing before the trial court, T.R.G. (appellant) was adjudged to be mentally
ill and in need of treatment at North Texas State Hospital, Wichita Falls, Texas. The
treatment was not to exceed 325 days. A document which can be reasonably interpreted
as a pro se notice of appeal was filed on May 3, 2005, by T.R.G. We abate and remand
the cause to the County Court, Randall County, Texas (trial court).

 In State for Best Interest and Protection of Ortiz, 640 S.W.2d 67 (Tex. App.-Amarillo
1982, no writ), we held that one adjudicated to be mentally ill via petition by the State is
entitled to the appointment of an attorney ad litem on appeal. Id. at 67. The record does
not reflect whether the trial court appointed T.R.G. such an attorney.

 Accordingly, we abate the appeal and remand the cause to the trial court. Upon
remand, the trial court shall determine whether T.R.G. has been appointed an attorney ad
litem on appeal. If it determines that he has not been accorded such an attorney, it is
directed to appoint (by written order) an attorney to T.R.G. to represent his interests on
appeal. Thereafter, the trial court shall include the name, address, telephone number, and
state bar number of the appointed attorney in the order and include the order in a
supplemental clerk's record. So too is the trial court directed to cause the supplemental
clerk's record to be filed with this court on or before Tuesday, May 31, 2005. 

 It is so ordered.

 Per Curiam 

 



d 1985, writ ref'd n.r.e.); see Brown v. Lundell, 344 S.W.2d
863, 869 (Tex. 1961) (stating that a lessee has the "right to use so much of the land as was
reasonably necessary in the production of oil and since the production of oil necessarily
involved its separation from the salt water, [the lessee] would have had the right, ordinarily
under the implied terms of the lease to use the land for that purpose . . . ."). Given both
provisions of the lease mentioned above (especially that allowing the use of water from the
leased premises for purposes of operating or pressurizing the field), the absence of any
lease provision otherwise barring the lessee from injecting salt water into the ground, and
the holdings in TDC and Brown, the lessee at bar had a right to dispose, through injection,
water acquired from the leased lands. (2) Furthermore, we reject the contention that the
collateral agreement executed in 1984 affected this right. 

 The 1984 document referred to the lessee's "desire" to use the oil well to "dispose
of oil, salt water, and/or other fluids produced from wells into said well." (Emphasis added). 
So too did it grant the lessee "the right and privilege . . . to recondition, rework, and
recomplete [sic] said well for the purpose of using same to disopose [sic] of oil, salt water
and/or other fluids produced from wells into said well" and to "inject oil, salt water and/or
fluids into said well from any well whether owned by Lessee or by others not parties to this
Agreement . . . ." (Emphasis added). Yet, nowhere in the agreement did the parties
expressly state that the agreement was intended to negate or otherwise limit rights
accorded the lessee under the mineral lease. Nor was the pre-existing oil and gas lease
specifically mentioned in the 1984 agreement. Similarly omitted from it was reference to
that provision in the mineral lease authorizing the lessee to use water "from said land . . .
for all operations . . . including repressuring, pressure maintenance and recycling." 
Moreover, from the plain meaning of the unambiguous wording we italicized above, it is
clear that the parties intended to expand the lessee's authority to inject water under the
1984 accord. No longer was the water restricted to that taken "from said land." The 1984
agreement permitted injection of water obtained from "any well," irrespective of who owned
the well from which the water was obtained. In other words, the well in question could be
used as a disposal point by the lessee for salt water derived from wells located off the
leased property. The mineral lease did not expressly address that issue. And, once the
1984 agreement ended, via Finley's cancellation of it, the greater right the lessee enjoyed
terminated as well. No longer could it use the well as a disposal for salt water obtained off-premises. 

 We further recognize that reading the agreement as somehow terminating the
lessee's implied and expressed rights under the mineral lease deviates from applicable
rules of contract interpretation. Admittedly, the phrase "any well" contained in the 1984
accord can be construed as including the wells on the land encompassed by the mineral
lease. Yet, we cannot ignore the circumstances existent at the time the agreement was
signed. See Colorado Interstate Gas Co., 47 S.W.3d 1, 7 (Tex. App.-Amarillo 2000, pet.
denied) (stating that when interpreting a contract, the circumstances existent at the time
it was executed may be considered). They include the pre-existing mineral lease, the
expressed rights and limitations it afforded with regard to the use of water, its utter lack of
mention in the 1984 contract, and the absence of any language in the latter contract
purporting to negate the right to use water for re-pressurization of the field on the premises
afforded under the mineral lease. Comparing these circumstances with the wording of the
1984 agreement, we cannot but conclude that the agreement purported to expand the
rights of the lessee, at least with regard to the disposition of salt water on the property. 
And, when that agreement ended, so too did the lessee's expanded rights. See Duff v.
DuBose, 27 S.W.2d 122, 124 (Tex. Comm'n App. 1930, judgm't affirmed). 

 Finally, the authority cited by the Stephens to the contrary is inapposite. Union
Producing Co. v. Allen, 297 S.W.2d 867 (Tex. Civ. App.-Beaumont 1957, no writ) and the
others dealt with whether a relinquishment of the "right" to complain about actions of a
lessee was adequate consideration to render an agreement enforceable. Here, the dispute
involves the effect, if any, of a later contract upon implied and expressed rights granted
under a pre-existing contract that remained enforceable. As can be seen, the issues differ.

 Accordingly, we overrule the Stephens' issues and affirm the final summary
judgment of the trial court.


 Brian Quinn

 Chief Justice 


 
1. Though this rule may be inapplicable if there exists alternative reasonable methods by which the
water can be disposed, see TDC Engineering, Inc. v. Dunlap, 686 S.W.2d 346, 348-49 (Tex. App.-Eastland
1985, writ ref'd n.r.e.), no one broaches that matter here.
2. No one argues that Finley was injecting salt water obtained from wells off the leased premises.