NO. 07-05-0023-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 27, 2006

_____

D.B. STEPHENS and SHEILA STEPHENS,

Appellants

v.

FINLEY RESOURCES, INC. and JAMES D. FINLEY,

Appellees

_____

FROM THE 121ST DISTRICT COURT OF YOAKUM COUNTY;

NO. 8043; HON. KELLY G. MOORE, PRESIDING

_____

*Memorandum Opinion*

_____

Before QUINN, C.J., REAVIS and CAMPBELL, JJ.

D.B. and Sheila Stephens (Stephens) appeal from a final judgment entered in favor of Finley Resources, Inc., and James D. Finley (Finley). The suit initiated by the Stephens against Finley sought recovery for salt water injected into an oil well located on Stephens' land. Finley purported to inject the water via implied rights granted him as the lessee of a mineral lease encompassing the well. Finley was not the original lessee, however. Nor were the Stephens the original lessors. Both acquired their interests long after the mineral lease was executed in 1945. Furthermore, the predecessors in interest of the Stephens

and Finley executed another agreement, in 1984, authorizing the lessee to inject salt water garnered from wells off the lease into the well on the lease in exchange for a rental payment of $3600 per year. Shortly after succeeding as lessee, Finley cancelled the agreement, yet continued the practice of injecting water into the well. It is the interplay between the original lease and the salt water injection agreement that formed the crux of the two issues before us. Through both, the Stephens argue that irrespective of whatever implied rights Finley may have had to inject water into the well, those were supplanted by the later salt water agreement. So, when Finley cancelled it, the company allegedly lost the right to inject water into the well or remained obligated to reimburse them for water so injected. And, since the trial court effectively held otherwise in granting Finley's summary judgment, it erred. We overrule the issues and affirm.

Under the original lease, the lessee was granted the right to investigate, explore, prospect, drill, operate and produce minerals as well as lay pipe, store oil, build tanks, power stations, telephone lines and other structures and do those things "to produce, save, take care of, treat, store and transport said minerals and other products manufactured therefrom . . . ." Additionally, the lessee was granted the right to use "water from said land, except water from lessor's wells, for all operations . . . including repressuring, pressure maintenance and recycling . . . ." Next, and assuming that the lease does not expressly provide otherwise, a lessee has an implied right to dispose of salt water produced in conjunction with performing its contractual obligations and may do so by injecting it into an oil and gas well on the leased premises.[1]  *TDC Engineering, Inc. v. Dunlap*, 686 S.W.2d

---

[1]Though this rule may be inapplicable if there exists alternative reasonable methods by which the water can be disposed, see *TDC Engineering, Inc. v. Dunlap*, 686 S.W.2d 346, 348-49 (Tex. App.–Eastland 1985, writ ref'd n.r.e.), no one broaches that matter here.

2

346, 348-49 (Tex. App.–Eastland 1985, writ ref'd n.r.e.); *see Brown v. Lundell*, 344 S.W.2d 863, 869 (Tex. 1961) (stating that a lessee has the "right to use so much of the land as was reasonably necessary in the production of oil and since the production of oil necessarily involved its separation from the salt water, [the lessee] would have had the right, ordinarily under the implied terms of the lease to use the land for that purpose . . . ."). Given both provisions of the lease mentioned above (especially that allowing the use of water from the leased premises for purposes of operating or pressurizing the field), the absence of any lease provision otherwise barring the lessee from injecting salt water into the ground, and the holdings in *TDC* and *Brown*, the lessee at bar had a right to dispose, through injection, water acquired from the leased lands.[2] Furthermore, we reject the contention that the collateral agreement executed in 1984 affected this right.

The 1984 document referred to the lessee's "desire" to use the oil well to "dispose of oil, salt water, and/or other fluids produced *from wells* into said well." (Emphasis added). So too did it grant the lessee "the right and privilege . . . to recondition, rework, and recomplete [sic] said well for the purpose of using same to disopose [sic] of oil, salt water and/or other fluids produced *from wells* into said well" and to "inject oil, salt water and/or fluids into said well from *any well* whether owned by Lessee or by others not parties to this Agreement . . . ." (Emphasis added). Yet, nowhere in the agreement did the parties *expressly* state that the agreement was intended to negate or otherwise limit rights accorded the lessee under the mineral lease. Nor was the pre-existing oil and gas lease specifically mentioned in the 1984 agreement. Similarly omitted from it was reference to

---

[2]No one argues that Finley was injecting salt water obtained from wells off the leased premises.

3

that provision in the mineral lease authorizing the lessee to use water "from said land . . . for all operations . . . including repressuring, pressure maintenance and recycling." Moreover, from the plain meaning of the unambiguous wording we italicized above, it is clear that the parties intended to expand the lessee's authority to inject water under the 1984 accord. No longer was the water restricted to that taken "from said land." The 1984 agreement permitted injection of water obtained from "any well," irrespective of who owned the well from which the water was obtained. In other words, the well in question could be used as a disposal point by the lessee for salt water derived from wells located off the leased property. The mineral lease did not expressly address that issue. And, once the 1984 agreement ended, via Finley's cancellation of it, the greater right the lessee enjoyed terminated as well. No longer could it use the well as a disposal for salt water obtained off-premises.

We further recognize that reading the agreement as somehow terminating the lessee's implied and expressed rights under the mineral lease deviates from applicable rules of contract interpretation. Admittedly, the phrase "any well" contained in the 1984 accord can be construed as including the wells on the land encompassed by the mineral lease. Yet, we cannot ignore the circumstances existent at the time the agreement was signed. *See Colorado Interstate Gas Co.,* 47 S.W.3d 1, 7 (Tex. App.–Amarillo 2000, pet. denied) (stating that when interpreting a contract, the circumstances existent at the time it was executed may be considered). They include the pre-existing mineral lease, the expressed rights and limitations it afforded with regard to the use of water, its utter lack of mention in the 1984 contract, and the absence of any language in the latter contract purporting to negate the right to use water for re-pressurization of the field on the premises

4

afforded under the mineral lease. Comparing these circumstances with the wording of the 1984 agreement, we cannot but conclude that the agreement purported to expand the rights of the lessee, at least with regard to the disposition of salt water on the property. And, when that agreement ended, so too did the lessee's expanded rights. *See Duff v. DuBose*, 27 S.W.2d 122, 124 (Tex. Comm'n App. 1930, judgm't affirmed).

Finally, the authority cited by the Stephens to the contrary is inapposite. *Union Producing Co. v. Allen,* 297 S.W.2d 867 (Tex. Civ. App.–Beaumont 1957, no writ) and the others dealt with whether a relinquishment of the "right" to complain about actions of a lessee was adequate consideration to render an agreement enforceable. Here, the dispute involves the effect, if any, of a later contract upon implied and expressed rights granted under a pre-existing contract that remained enforceable. As can be seen, the issues differ.

Accordingly, we overrule the Stephens' issues and affirm the final summary judgment of the trial court.


Brian Quinn
Chief Justice